O

# United States District Court
# Central District of California

| | |
|---|---|
| LEGENDZ ENTERTAINMENT, LLC et al.,<br><br>                Plaintiffs,<br><br>       v.<br><br>CAM SPECIALTY LENDING 1, LTD et al.,<br><br>                Defendants. | Case № 2:23-cv-03097-ODW (MARx)<br><br>**ORDER GRANTING MOTION TO DISMISS [35]** |

## I. INTRODUCTION

Plaintiffs Legendz Entertainment LLC and Cinematic LLC (collectively, "Legendz") bring this breach of contract and tort action against Defendants Crescendo Asset Management LLC ("CAM"), CAM Specialty Lending 1, Ltd. ("CSL"), Crescendo Capital S.A., and Brian Weiner.  (Second Am. Compl. ("SAC"), ECF No. 14.)  Crescendo Capital now moves to dismiss the Second Amended Complaint as against it pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2).[1]  (Mot. Dismiss ("Mot." or "Motion"), ECF No. 35.)  For the reasons below, the Court **GRANTS** the Motion.[2]

---

[1] Crescendo Capital nominally states it is also moving pursuant to Rule 12(b)(6); however, its analysis in the Motion focuses entirely on Rule 12(b)(2).  Therefore, the Court does the same.

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[3]

In August 2022, Legendz committed to promote a World Boxing Council pay-per-view fight between two professional boxers on November 26, 2022. (SAC ¶¶ 12, 20.) Legendz's "main job" pursuant to this agreement was to "source the marketing and operating capital required to promote the title fight" and "generate sufficient revenue to cover the purses paid to the boxers plus all the other expenses incurred in organizing and staging the event." (*Id.* ¶¶ 14, 16.)

In October 2022, Legendz came to an oral understanding with "Defendants" regarding the event's financing. (*See id.* ¶ 20.) Legendz requested and received funding assurances letters from CAM and Crescendo Capital. (Opp'n Mot. Dismiss ("Opp'n") 14, ECF No. 41.) On November 21, 2022, Legendz entered into a written contract with CSL, a client of CAM ("Contract"). (*See* SAC ¶¶ 23, 29[4]; Decl. Dylan Marer ISO Opp'n ("Marer Decl.") Ex. A, ECF No. 41-2 (Letter of Direction, indicating that Legendz entered into an asset purchase agreement with CSL concerning the event); Decl. Douglas Kalen ISO Mot. ("Kalen Decl.") ¶ 7, ECF No. 37.) The Contract obligated CSL to provide full funding on the day of the Contract's execution—November 21, 2022. (SAC ¶ 23.) CSL failed to provide full payment at that time, and instead made late installment payments on November 25, November 30, December 1, and December 2. (*Id.* ¶ 27.)

Brian Weiner, CAM's Executive Director and Portfolio Manager, executed the Contract on behalf of CAM and CAM's client, CSL. (Decl. Brian Weiner ISO Reply ("Weiner Decl.") ¶ 2, ECF No. 43-1.) Crescendo Capital was not a party to the Contract. (*Id.*) However, Legendz contends that Weiner's communications concerning the Contract led Legendz to believe that Crescendo Capital was involved

---

[3] The background facts derive from Legendz's well-pleaded allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[4] Legendz purports to attach the Contract between Legendz and Defendants to the Second Amended Complaint as Exhibit A. However, Exhibit A does not identify any Defendant and is not executed by any Defendant. (*See* SAC Ex. A, ECF No. 14-1.) As such, it does not establish a written agreement between Legendz and any Defendant.

in funding the event. (*See* SAC ¶ 24; Opp'n 11–20; Marer Decl. Exs. B–D, F, ECF No. 41-2.) Specifically, Legendz contends that emails and text messages Weiner sent to Legendz's CEO, Dylan Marer, and a funding assurances letter from Crescendo Capital led Legendz to believe that Weiner "acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer" for not only CAM and CSL, but also Crescendo Capital and the broader "Crescendo Group." (SAC ¶ 24; Opp'n 7–8, 12.)

Legendz relied on the promised funding, and as a result of the lack of timely funding, the boxing event suffered from "diminished marketing, loss of viewership . . . , loss of revenue, [and] delayed payment of the boxers' purses." (SAC ¶ 28.) Legendz claims that CAM, CSL, and Crescendo Capital knew or should have known that (1) they would not be able to pay on time, (2) it was fraudulent and/or negligent to continue representing that they would pay on time, and (3) a breach of the Contract would damage Legendz's "reputation in the event and boxing industries, the ability to hire and pay celebrity talent, performers and produce high budget, broadcast corporate events and concerts." (*Id.*)

Based on the above allegations, Legendz brings this action asserting six causes of action against CAM, CSL, Weiner, and Crescendo Capital: (1) breach of written contract, (2) promissory estoppel, (3) fraudulent inducement, (4) negligent inducement, (5) negligence, and (6) declaratory relief. (*Id.* ¶¶ 29–63.) Before Crescendo Capital appeared in the case, Legendz, CSL, CAM, and Weiner stipulated to submit their dispute to voluntary binding arbitration. (Order re: Stip. Arb., ECF No. 24.) The Court approved the stipulation and stayed the case as to Legendz's claims against CSL, CAM, and Weiner. (*Id.*)

Crescendo Capital has since appeared and moves to dismiss Legendz's claims against it pursuant to Rule 12(b)(2), for lack of personal jurisdiction. The Motion is fully briefed. (*See* Opp'n; Reply ISO Mot. ("Reply"), ECF No. 43.)

### III. LEGAL STANDARD

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due-process requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10. When this is the case, the court inquires whether the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When, as here, a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). However, the plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800. The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but factual conflicts between dueling affidavits must be resolved in the plaintiff's favor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (internal quotation marks and citations omitted). "[B]are bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (internal quotation marks omitted). Nor will "random," "fortuitous," or "attenuated" contacts establish specific personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

## IV. DISCUSSION

Crescendo Capital moves to dismiss this action as against it for lack of personal jurisdiction. (*See generally* Mot.) Courts may exercise general or specific personal jurisdiction over nonresident defendants. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Legendz concedes that Crescendo Capital is not subject to general jurisdiction and opposes dismissal only as to specific personal jurisdiction. (Opp'n 15.)

In light of this concession, the question narrows to whether Crescendo Capital's contacts with California are sufficient to render the exercise of specific personal jurisdiction reasonable. *See Schwarzenegger*, 374 F.3d at 802. To answer this question, the Ninth Circuit applies a three-prong test: (1) the nonresident defendant "purposefully direct[s] his activities or consummate[s] some transaction with the forum," or performs "some act by which he personally avails himself of the privilege of conducting activities in the forum"; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice," i.e., it is reasonable. *Id.* If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case" that the third prong—reasonableness—has not been satisfied. *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

As the party asserting jurisdiction, Legendz bears the burden of satisfying the first two prongs of this test. *Id.* The showing necessary to satisfy the first prong varies slightly depending on whether the case sounds in contract or in tort. *Id.* Legendz brings both contract and tort-based causes of action. Therefore, with respect to contract claims, Legendz must establish that Crescendo Capital "purposefully availed itself of the privilege of conducting activities in California." *Id.* Regarding tort claims, Legendz must establish that Crescendo Capital "purposefully directed its activities toward California." *Id.*

### A. Purposeful Availment

A showing of purposeful availment "typically consists of evidence of the defendant's actions *in the forum*, such as executing or performing a contract there." *Id.* (emphasis added).

Crescendo Capital asserts, and Legendz does not dispute, that Crescendo Capital was not a signatory to the Contract. (Kalen Decl. ¶ 7; Opp'n 16.) Nevertheless, Legendz argues that Crescendo Capital engaged in actions in California through Weiner, who acted as an "agent, servant, employee, co-conspirator, alter-ego and/or joint venturer" for Crescendo Capital and its owner, the umbrella company Crescendo Group. (Opp'n 7, 14–15.) Legendz contends that Weiner's intentional acts in the forum may therefore be properly ascribed to Crescendo Capital under a principal-agent relationship. (Opp'n 11–15.) However, Legendz supports its belief about Weiner's agent-connection to Crescendo Capital with only Marer's unfounded interpretations of Weiner's communications: (1) Marer "understood" Weiner's references to "Geneva" (*e.g.*, Geneva, Switzerland) and "CEO" in text messages to mean Crescendo Capital, and (2) Marer understood that Crescendo Capital's funding assurances letter, stating that "Crescendo Capital S.A. (and/or other of its suitable affiliates) *has the capacity* to allocate" funds, to mean that Crescendo Capital funded the event. (Marer Decl. ¶¶ 2–7, 11–12; *id.* Ex. C (emphasis added); Opp'n 11–15.)

In contrast to Legendz's speculative affidavit, Crescendo Capital submits declaration testimony from its own CEO and from Weiner, both expressly and directly refuting that Weiner had any connection with Crescendo Capital. (*See* Kalen Decl. ¶ 8 ("Weiner does not work for and is not affiliated with Cresendo Capital . . . . At all times relevant hereto Mr. Weiner was working solely for [CAM] and on behalf of its client, [CSL]."); Weiner Decl. ¶¶ 2–3 ("At no time have I ever worked for or been an agent of Crescendo Capital.").) Weiner further attests that when he used the terms "Geneva" and "CEO" in text messages with Marer, he "was <u>not</u> referring to

1  Crescendo Capital," but instead to CAM's client CSL, located in Geneva, and CAM's
2  CEO. (Weiner Decl. ¶¶ 2–4.2.[5])

Legendz does not object to or adequately refute Crescendo Capital's explicit affidavit denials. (*See generally* Opp'n.) Nor does Legendz respond or request the opportunity to respond with additional support for its agency contentions in the face of those direct denials. Thus, Legendz fails to overcome Crescendo Capital's evidentiary showing and the Court accepts as true Crescendo Capital's factual assertions that Weiner's actions were not taken on Crescendo Capital's behalf. Accordingly, the Court concludes that Crescendo Capital has not conducted any in-forum activities that warrant a purposeful availment analysis.

**B.     Purposeful Direction**

The Court next examines whether Crescendo Capital purposefully directed its conduct toward California. *Schwarzenegger*, 374 F.3d at 802. A showing of purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum." *Id.* at 803.

Purposeful direction is evaluated under a three-part "effects" test. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* However, "a foreign act with foreseeable effects in the forum state" does not "always give[] rise to specific [personal] jurisdiction." *Schwarzenegger*, 374 F.3d at 804 (second alteration in original). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Here, after excluding all alleged conduct by Weiner for the reasons explained above, the evidence of

---

[5] Weiner identifies two paragraphs in his Declaration with the numeral "4." The Court cites the first as "4.1" and the second as "4.2."

Crescendo Capital's potential purposeful direction is limited to the act of mailing a funding assurance letter at Legendz's request. (*See* Mot. 1; Kalen Decl. ¶ 7; Opp'n 5.) Thus, the Court considers whether this letter satisfies purposeful direction.

The first requirement is an intentional act, i.e. a real-world manifestation of the actor's will. *Schwarzenegger*, 374 F.3d at 806. At Legendz's request, Crescendo Capital prepared a funding assurance letter for Legendz. (Kalen Decl. ¶ 7, Ex. 1.) Preparing a letter constitutes an intentional act. *See Bancroft & Masters Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (concluding that defendant "acted intentionally when it sent its letter to [plaintiff]"), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). Therefore, the first requirement is met.

The second requirement is that Crescendo Capital "expressly aimed" its intentional act at the forum. *Schwarzenegger*, 374 F.3d at 806. In general, a defendant expressly aims its act at the forum when it intentionally directs its actions at a forum resident. *Id.* However, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Rather, the court must evaluate the defendant's "minimum contacts" with the forum, including "the relationship among the defendant, the forum, and the litigation." *Id.* at 284 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)); *see also Schwarzenegger*, 374 F.3d at 807 (finding that the possibility the foreign defendant's act may have "eventually caused harm" to the plaintiff in California, or that the defendant "may have known" the plaintiff was in California did "not confer [personal] jurisdiction" in California over the defendant).

Here, Crescendo Capital's only contact with California was preparing the funding assurances letter for Legendz (a California resident), at Legendz's request. (Mot. 1; Opp'n 5.) Legendz argues that this letter relates to the Contract because it concerns funding for the California-based boxing event. (Opp'n 5.) However, Legendz mischaracterizes the letter, as "inform[ing] Plaintiffs that Crescendo Capital

will be funding and financially supporting the boxing fight that is the subject of this matter." (*Id.*) Legendz argues on this basis that Crescendo Capital "intentionally put money into a California operation with the intention of obtaining a return on the investment." (*Id.* at 5–6.) Yet, Crescendo Capital was never a party to the Contract, did not fund the boxing event or otherwise "put money into a California operation," and has no other contacts with the state of California. (Mot. 0, 3; Kalen Decl. ¶ 7.) The funding assurance letter on which Legendz so heavily depends states only that "Crescendo Capital (and/or one of its suitable affiliates) *has the capacity to allocate*" funds, not that it or its affiliates were committing to do so. (Kalen Decl. ¶ 7, Ex. 1 (emphasis added).) On its own, such a one-time interaction with a forum-state resident is usually not enough to establish the minimum contacts necessary for specific personal jurisdiction. *See, e.g.*, *Burger King*, 471 U.S. at 478 ("[Even] [a]n individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum.").

Moreover, the Ninth Circuit has expressed reluctance to find purposeful direction's express aiming when the one-time action is mailing a neutral letter, such as the one at issue here stating that funds could be available. *See Yahoo!*, 433 F.3d at 1208 ("[A] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender."); *cf. Bancroft*, 223 F.3d at 1087–88 (holding that sending a letter intended to trigger dispute resolution procedures or interfere wrongfully with a plaintiff's rights is sufficient to establish personal jurisdiction). The aversion to premising purposeful availment on a single letter is even stronger where a defendant engages in no other acts in California. *See Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379–80 (9th Cir. 1981) (discussing *Chem Lab Prods, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) ("[D]irecting that the letter be mailed to California could not support personal jurisdiction over defendant because he did not commit any personal acts with consequences in California." (internal quotation marks omitted))).

Here, the tie between Crescendo Capital and California is particularly weak. This is in part because Legendz requested the letter—Crescendo Capital did not independently "reach out beyond" Switzerland to create a relationship with a California resident. *Burger King*, 471 U.S. at 473. Rather, Crescendo Capital responded to contact that Legendz initiated. And this single letter is the extent of Crescendo Capital's connection to California in this case. The single funding assurances letter here, standing alone, is not a contact that justifies the exercise of personal jurisdiction. *See Yahoo!*, 433 F.3d at 1209 (concluding a "normal" cease and desist letter, that was not "abusive, tortious or otherwise wrongful," did not justify the exercise of personal jurisdiction when considered alone).

As the sole act of mailing a neutral letter upon request does not establish that Crescendo Capital expressly aimed tortious conduct at California, Legendz fails to show purposeful direction.

Legendz has not met its burden to show that Crescendo Capital purposefully availed itself of California or otherwise purposefully directed its activities at the state. Therefore, the Court declines to reach the questions of whether Legendz's claims arise from Crescendo Capital's forum-related activities or whether Crescendo Capital demonstrates the exercise of personal jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.

## V. JURISDICTIONAL DISCOVERY

Legendz requests the Court grant jurisdictional discovery on the issue of Crescendo Capital's relationship to the other Defendants and its contacts with California. (Opp'n 21–22.[6])

Whether to grant jurisdictional discovery is subject to the Court's discretion. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("[R]efusal [to grant discovery] is not an abuse of discretion when it is clear

---

[6] The Court declines to consider Legendz's late-filed supplemental brief. (Suppl., ECF No. 42); C.D. Cal. L.R. 7-12. Even if the Court did consider it, the proffered case opinion is unpersuasive and inapposite.

that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction."). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (alterations omitted).

Here, Crescendo Capital successfully rebuts Legendz's good-faith but speculative allegations, and Legendz fails to demonstrate that any amount of jurisdictional discovery would produce facts sufficient to constitute a basis for personal jurisdiction. Accordingly, the Court denies Legendz's request for jurisdictional discovery.

## VI. LEAVE TO AMEND

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Here, it is clear that Legendz can allege no additional "facts consistent with the [record and] challenged pleading [that] could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). In light of the present record, the Court finds amendment "would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## VII. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Crescendo Capital's Motion. (ECF No. 35.) The action is dismissed as against Crescendo Capital, without leave to amend.

**IT IS SO ORDERED.**

June 5, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**